JOSEPH MARIANO *vs.* BUILDING INSPECTOR OF
MARLBOROUGH & another.

Middlesex.   December 6, 1967. — February 9, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Zoning*, Map.   *Mandamus.*

Where it was evident that the zoning enforcement officer of a city would not act to enforce its zoning ordinance, it was open to a citizen of the city to bring a mandamus proceeding against him to compel him to do so. [664]

The record in a mandamus proceeding required the conclusion that a "Zoning Plan" of a city dated 1956 "as approved by the City Council," attested by the city clerk, appended to publications in a pamphlet and a local newspaper of a zoning ordinance adopted by the council in that year, and showing a certain lot as located in a residential district, was the map adopted as part of the ordinance, not a drastically different map dated 1954, entitled "Original Proposed Zoning Map as presented to the City Council" in 1956, signed by individual members of the city planning board but otherwise unattested, and showing a portion of the lot as located in a business district. [666]

PETITION for a writ of mandamus filed in the Superior Court on September 14, 1966.

The case was heard by *Kalus*, J.

*J. Fleet Cowden* for the petitioner.

*James M. Sweeney* for the respondent Sandor Katona.

REARDON, J. This is a petition for a writ of mandamus brought by a citizen of Marlborough to compel the building inspector of Marlborough to revoke a building permit issued by him to the respondent Sandor Katona. It seeks also a permanent injunction against Katona prohibiting him from engaging in the sale and repair of automobiles on a lot owned by him in Marlborough. The petition alleges that the lot owned by Katona is located in a Residence I district, and that following submission by Katona of a site plan in accordance with the requirements of the city's zoning ordinance the building inspector issued the permit. The petition further alleges that while the Katona lot was located in a Residence I district on the original zoning map which was a part of the zoning ordinance adopted by the city on April 16, 1956, the zoning map has since that time been altered without appropriate authority to place a portion of the Katona lot in a business district. The respondents deny that the map to which the petitioner makes reference is a valid copy of that which was made part of the ordinance, and Katona in his answer refers to a second map which "specifically designated an area surrounding and including . . . [his] property as part of a 'Business District.' "

The case was heard by a judge of the Superior Court before whom it was stipulated that from the time of adoption of the zoning ordinance there were no amendments affecting the Katona lot. The court found the lot to be situated within a business district on the basis that the plan referred to in Katona's answer was the plan incorporated in the zoning ordinance, that there was a plan subsequently prepared and attached to printed copies of the ordinance which through error placed the locus in a residence district, and that the building inspector acted within his authority in granting the permit to Katona. The petitioner appeals from an order for judgment dismissing his petition.

1. Since it is evident that the enforcing officers of the city will not act it was open to the petitioner to bring this mandamus petition. *Brady* v. *Board of Appeals of Westport,*

348 Mass. 515, 519, and cases cited. An appeal under G. L. c. 213, § 1D, from an order decisive of the issues in a petition for a writ of mandamus is subject to the practice in equity. *Rothenberg* v. *Boston Housing Authy.* 335 Mass. 597, 599, and cases cited. We review this matter testing whether the order for dismissal is warranted by the judge's findings subject to their being supported by the reported evidence. *Schafer* v. *Zoning Agent of Bellingham*, 351 Mass. 651, 653. *Gordon* v. *O'Brien*, 320 Mass. 739, 740.

2. We have carefully reviewed the record, including the oral testimony and the exhibits. It appears that when in February, 1956, the city council undertook consideration of a zoning ordinance there was presented to it a map dated 1954 and entitled, "Original Proposed Zoning Map as Presented to the City Council on February 27, 1956" (exhibit 6). This map was signed by individual members of the city planning board but was otherwise unattested. At least a portion of the locus was zoned for business on this map. The city council thereafter, on April 16, 1956, adopted a zoning ordinance, which was approved by the mayor on April 24, 1956. The ordinance was later published in pamphlet form and in the Marlborough Daily Enterprise. To each such publication was appended a "Zoning Plan" dated 1956 "as approved by the City Council" and bearing the attestation of the city clerk. The "Zoning Plan" as thus published located the Katona lot and many lots surrounding it in a residential district. The city engineer testified that exhibit 6 and the 1956 maps varied in many respects, "that the shapes of the zoning on each one are different," and that they were two entirely "different plans." Our inspection of them confirms this testimony. A reprint of the zoning ordinance dated January, 1966, is before us, and on the map appended to the reprint it appears that the area immediately surrounding and including part of the Katona lot, as demonstrated in still another exhibit, is zoned for business. The area in the vicinity of the lot and including part of it is different in configuration from the area so zoned in exhibit 6 which the council had before it

in its deliberations prior to adopting the ordinance in 1956. Notwithstanding certain testimony by the city clerk, in which he asserted exhibit 6, the unattested 1954 map, to be the true one in the face of his attestation of the 1956 map as twice published, we are of the view that findings are compelled on all that is before us that the 1956 map was that adopted as part of the ordinance, that the change in the classification of a large part of the Katona lot appearing in the map appended to the 1966 reprint of the zoning ordinance which placed that part in a business zone had no warrant or authority, and that the Katona lot remains in a residential district. We so conclude for the following reasons.

The 1956 map appended to the printed pamphlet and published in the local press bore the attestation of the city clerk. Under G. L. c. 233, § 75, such copies of the ordinance were admissible "as sufficient evidence thereof." Exhibit 6 is clearly labelled as a proposal only and carries no attestation by the city clerk. The city clerk testifies he attested to the 1956 map but not to exhibit 6. The two maps are drastically different according to the city engineer and our own observation. While exhibit 6 was returned to the office of the city clerk it did not achieve the status of a public record under G. L. c. 4, § 7, Twenty-sixth.

3. Were we not to conclude, as we do, that the Katona lot is in a residential district in conformity with the 1956 and prevailing zoning map of Marlborough, we should be faced with a serious question of whether the lot, even under exhibit 6, which places much of it in a residential district, could be put to business use. In view of our disposition of this matter we do not explore what might result from a holding that exhibit 6 was that map which is now valid.

4. The order for judgment is reversed. Judgment is to be entered for issuance of a writ of mandamus commanding the building inspector to revoke the building permit issued to Katona and to enforce against Katona the provisions of the Marlborough zoning ordinance.

*So ordered.*